United States District Court
Southern District of Texas
**ENTERED**
September 30, 2021
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| DR. OLGA CHAPA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:20-cv-00032 |
| | § | |
| THE UNIVERSITY OF HOUSTON AT | § | |
| VICTORIA and THE UNIVERSITY OF | § | |
| HOUSTON SYSTEM, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dr. Olga Chapa filed a Title VII action against the University of Houston at Victoria and the University of Houston System (the "Defendants") after allegedly experiencing repeated sexual harassment by one of the Defendants' male employees over the course of several years.  Chapa claims the Defendants are vicariously liable for the conduct of this employee because he created a hostile work environment for Chapa and retaliated against her for reporting this conduct.  Chapa also claims that the Defendants discriminated against her because of her gender and national origin.  The Defendants filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure asserting, among other things, that:  (1) sovereign immunity bars Chapa's prayer for punitive damages, (2) Chapa's claims are time barred, and (3) Chapa fails to state a plausible claim for which relief can be granted.  Although Chapa agrees that her prayer for punitive damages should be dismissed, she otherwise opposes the Defendants'

Motion.[1]  For the following reasons, the Court **GRANTS** the Defendants' Motion.  (Dkt. No. 10).  Plaintiff is **ORDERED** to file an Amended Complaint in accordance with this Memorandum Opinion and Order within fourteen days.

## I.   FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

For purposes of this Motion, the Court takes as true the factual allegations made in Chapa's Amended Complaint.  Chapa is a sixty-year-old Hispanic female.  (Dkt. No. 7 at ¶ 7).   In August 2009, the Defendants hired Chapa as an Assistant Professor of Management in the School of Business at the University of Houston at Victoria ("UHV").  (*Id.* ¶¶ 1–3, 8, 48–50).  In the Fall of 2009, Dr. Farhang Niroomand, Dean of the School of Business Administration at UHV, began talking to Chapa about his concerns with certain employees and his relationship with his wife.  (*Id.* at ¶ 9).  One year later, Niroomand began attempting to kiss Chapa.  (*Id.*).  Chapa rejected these attempts.  (*Id.* at ¶ 10). Around this time, Chapa learned that Niroomand behaved similarly toward at least one other female employee.  (*Id.* at ¶ 9).

Niroomand's attempts to kiss Chapa, and her rejection of these attempts, continued into 2014.  (*Id.* at ¶ 10).  One specific encounter with Niroomand on March 21, 2014, impacted her emotional state.  (*Id.* at ¶ 11–13).  While staying at a hotel for a meeting

---

[1]   Indeed, with respect to a prayer for punitive damages under Title VII, "[s]ection 1981a prohibits punitive damage awards against governments and political subdivisions."  *Oden v. Oktibbeha County*, 246 F.3d 458, 466 (5th Cir. 2001); *accord* 42 U.S.C. § 1981a(b)(1).  "Because of the clear prohibition of punitive damage awards against state agencies and state officers in their official capacity, [a plaintiff] cannot recover punitive damages under Title VII."  *Bates v. Univ. of Tex. Med. Branch*, 425 F. Supp. 2d 826, 840 (S.D. Tex. 2003).  Therefore, the Court **DISMISSES WITH PREJUDICE** Chapa's prayer for punitive damages.  *See id.* (dismissing with prejudice a claim for punitive damages because such claims are barred under Title VII against state agencies).

that UHV required faculty to attend in Sugar Land, Texas, Niroomand followed Chapa to her hotel room from the lobby bar.  (*Id.* at ¶¶ 11–12).  Niroomand forced his way into Chapa's room and sat on the desk chair.  (*Id.* at ¶ 12).  Chapa pleaded for Niroomand to leave her room, but he refused to do so unless Chapa closed the door.  (*Id.*).  Chapa complied, but Niroomand did not leave immediately.  (*Id.*).  In fact, it took approximately one hour for Niroomand to leave Chapa's room.  (*Id.*).  Niroomand made no additional sexual advances toward her beyond those that occurred in 2014.[2]  (Dkt. No. 11 at ¶ 35).

Chapa applied for tenure and promotion in August 2014.  (Dkt. No. 7 at ¶ 15).  While the committee charged with considering applications for tenure and promotion was considering Chapa's application, Niroomand contacted at least one member of the committee to lobby against Chapa's application.  (*Id.*).  Although Chapa ultimately received tenure and promotion to Associate Professor in August 2015, "her salary increase was about half of that received by [an] [A]nglo female and less [than] that . . . received by the males who previously and subsequently received tenure and promotion in the Management Department."  (*Id.*).

In February 2016, Chapa received an e-mail from her department chair notifying her that she was being assigned to teach Strategic Management, a course outside of her department, for the Fall 2016 semester.  (*Id.* at ¶ 17).  Chapa was again assigned to teach this course for the Spring 2017, Fall 2017, and Spring 2018 semesters.   (*Id.* at ¶¶ 18, 20, 24, 27, 32).

---

[2]    Moreover, Chapa, in her Response to the Defendants' Motion, admits Niroomand made no such advances toward her after 2014.  (Dkt. No. 11 at ¶ 35).

In January 2017, Chapa began sick leave under the Family Medical Leave Act[3] to address emotional and physical issues resulting from the alleged sexual harassment she endured from Niroomand and her assignment to teach a course outside of her department.  (*Id.* at ¶ 22).  Chapa's psychiatrist diagnosed her with Post Traumatic Stress Disorder and Generalized Anxiety Disorder.  (*Id.*).

In February 2017, Chapa filed a Formal Complaint with UHV against Niroomand.  In her Formal Complaint, Chapa alleged that Niroomand sexually harassed her and that he retaliated against her.  (*Id.* at ¶ 21).  On September 18, 2017, UHV released a confidential report enumerating its findings concerning Chapa's allegations against Niroomand.[4]  (*Id.* at ¶ 28).

On August 18, 2017, a month before that report was released, Niroomand resigned from his position as Dean of the School of Business Administration at UHV and went on leave.  (*Id.* at ¶ 26).  In an August 21, 2017 e-mail to UHV faculty and staff, UHV President Dr. Victor Morgan stated that Niroomand was provided "Faculty Developmental Leave for the fall and spring semesters to prepare for his return to the classroom and assume his duties as Professor of Economics and International Business and other duties at UHV."  (*Id.*).

Despite being on leave for the Fall semester, Niroomand requested an office on campus.  (*Id.* at ¶ 27).  UHV assigned Niroomand an office on the same floor as Chapa, causing her significant anxiety.  (*Id.*).   Chapa's anxiety and fear of encountering

---

[3]   29 U.S.C. § 2601 *et seq.*

[4]   The findings of this report are not part of the record before this Court.

Niroomand continued into October 2017 and resulted in her taking sick leave again.  (*Id.* at ¶ 29).  In light of her condition and a recommendation from her psychiatrist, UHV allowed her to teach the Strategic Management course online for the Spring 2018 semester.  (*Id.* at ¶ 32).

In June 2018, Chapa learned that Niroomand was assigned to teach during the Fall 2018 semester.  (*Id.* at ¶ 34).  Chapa filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC").  (*Id.* at ¶ 35).  In her Charge, which she filed on June 26, 2018, Chapa noted that she had filed a Formal Complaint against Niroomand in early 2017 for sexual harassment and had been a witness in a sexual harassment complaint against Niroomand filed by a co-worker in 2015.  (Dkt. No. 1-1).  Chapa alleged she had "experienced a hostile work environment, including reassignments to another department (Strategy) to teach a capstone course."  (*Id.*).  She noted this hostile work environment forced her to take sick leave, which adversely impacted her 2017 performance evaluation and the likelihood that she would receive a merit raise in August 2018.  (*Id.*).  Chapa also alleged she was "being discriminated against because of [her] sex (female), national origin (Hispanic) . . . and retaliated against because of being a witness to and because of filing [her] sexual harassment complaint . . . ."[5]  (*Id.*).  In response to Chapa's Charge, the EEOC issued a Dismissal and Notice of Rights on February 19, 2020 ("Notice").  (Dkt. No. 1-2).  In the Notice, the EEOC stated

---

[5]     In her Charge, Chapa also alleges the Defendants discriminated against her based on her "age (59) . . . in violation of . . . the Age Discrimination in Employment Act of 1967, as amended." (Dkt. No. 1-1).  Chapa did not keep this allegation in her Amended Complaint.  (Dkt. No. 7 at ¶ 4).

that it was "unable to conclude that the information obtained establishes violations of the statutes." (*Id.*).

After filing her Charge, Chapa requested an accommodation from the Defendants under the Americans with Disabilities Act ("ADA").[6] (Dkt. No. 7 at ¶ 36). Chapa attached a letter from her psychiatrist to the request. (*Id.*). In the letter, Chapa's psychiatrist recommended that Chapa be allowed to teach online courses. (*Id.*).

On September 6, 2018, the Director of Human Resources ("Director") sent Chapa an ADA accommodation request form that differed significantly from accommodation request forms made available to other employees. (*Id.* at ¶ 37). Chapa instead completed the accommodation request forms available on the UHV website and submitted them on September 23, 2018. (*Id.*).

On October 2, 2018, Chapa learned she had been assigned to teach a class on UHV's Katy campus. (*Id.* at ¶ 38). She contacted Yang, who was the Management Department Chair at that time, to inquire about this decision. (*Id.* at ¶¶ 23, 38). Chapa learned that the Director had met with three department chairs to inform them of her ADA accommodation request and "[A]t this meeting, it was decided that . . . [Chapa] would be sent to Katy because 'she can't teach on [the] Victoria Campus.'" (*Id.* at ¶ 38).

On October 5, 2018, the Director contacted Chapa about her ADA accommodation request. (*Id.* at ¶ 39). In an e-mail to Chapa, the Director stated:

> [Your] job responsibilities also include . . . other duties as
> assigned by the dean and the chair. These additional
> responsibilities, in addition to teaching will require work on

---

[6]   42 U.S.C. § 12101 *et seq.*

> campus and interaction with other faculty members,
> including Dr. Niroomand . . . How do you anticipate
> participating in your other on campus duties of [your] job?

(*Id.*) ("Director's e-mail to Chapa").  Chapa's ADA accommodation request was subsequently denied.  (*Id.* at ¶ 41).  Chapa was also assigned to teach four courses for the Spring 2019 semester.  (*Id.* at ¶ 40).  All of them were online.  (*Id.* at ¶¶ 40–41).

In April 2019, Chapa received her 2018 evaluation, which was negatively impacted by her 2017 evaluation.  (*Id.* at ¶¶ 33, 43).  Chapa filed a grievance regarding her 2017 and 2018 evaluations.  (*Id.* at ¶ 43).  The grievance committee and Provost of UHV later determined that Chapa's 2017 and 2018 evaluations were improper.  (*Id.* at ¶¶ 43–44).  Yang eventually agreed to revise Chapa's evaluations and later revised her 2018 evaluation.[7]  (*Id.* at ¶ 46).  Chapa, however, has not received the salary increases she was denied in 2018 and 2019.  (*Id.*).

On May 19, 2020, Chapa filed her Original Complaint against the Defendants.  (Dkt. No. 1).  Chapa then filed her Amended Complaint on May 21, 2020.  (Dkt. No. 7).  Chapa's Amended Complaint alleges two counts.  (*Id.* at ¶¶ 47–61).  In Count One, Chapa alleges that Niroomand created a hostile work environment for her by repeatedly making sexual advances between 2009 and 2014 and retaliated against her for rejecting his sexual advances and reporting his conduct.[8]  (*Id.* at ¶¶ 51–54).  And because Niroomand was

---

[7]    Chapa does not indicate in her Amended Complaint whether Yang revised her 2017 evaluation in accordance with the grievance committee's findings.

[8]    Chapa has alleged hostile work environment and retaliation claims under the same count.  (Dkt. No. 11 at ¶¶ 47–55).  However, the Supreme Court has held that these claims are distinct, and whether they are timely is a separate inquiry.  *See Nat'l R.R. Passenger Corp. v.*
(continue)

7

one of their employees, Chapa alleges that the Defendants are vicariously liable for his conduct under Title VII.  (*Id.*).  In Count Two, Chapa alleges that the Defendants discriminated against her based on her gender and national origin by failing to compensate her at the same level as male and Anglo-female assistant and associate professors of management, and by assigning her to teach courses outside her department and classes with higher enrollments.  (*Id.* at ¶¶ 58–60).

On June 10, 2020, the Defendants filed this Motion, moving to dismiss the Amended Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. No. 10).  In their Motion, the Defendants assert, among other things,[9] that sovereign immunity bars Chapa's prayer for punitive damages, Chapa's claims are time barred, and she fails to state a plausible claim for which relief can be granted.  (Dkt. No. 10).  Chapa filed a Response on June 30, 2020.  (Dkt. No. 11).  In her Response, Chapa agrees that her prayer for punitive damages should be dismissed but opposes the Defendants' Motion in all other respects.  (*Id.*).  The Defendants filed a Reply on July 6, 2020.  (Dkt. No. 14).

---

*Morgan*, 536 U.S. 101, 110–22, 122 S.Ct. 2061, 2070–77, 153 L.Ed.2d 106 (2002); *see also McMorris v. La. State Penitentiary*, No. CV 04-492-JJB, 2007 WL 9700912, at *3 (M.D. La. Feb. 9, 2007) (stating that a "[p]laintiff's claim of retaliation and her claim of sexual harassment constitute two *distinct* unlawful employment practices").  So, this Court treats Chapa's hostile work environment and retaliation claims as separate claims.

[9]   The Defendants also assert Chapa's hostile work environment claim fails as a matter of law.  (Dkt. No. 10 at ¶¶ 9–18).  The Court does not address this assertion because it disposes of this claim on alternate grounds.

## II.    STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "failure to state a claim upon which relief may be granted."  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than labels and conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

In reviewing a 12(b)(6) motion to dismiss, a court must accept the plaintiff's factual allegations as true and view those allegations in the light most favorable to the plaintiff. *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991).  The court must evaluate whether "a complaint . . . contains[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Dismissal . . . is appropriate where the plaintiff fails to allege 'enough facts to state a claim that is plausible on its face' and thus does not 'raise a right to relief

above the speculative level.'" *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S.Ct. at 1965, 1974).

The court need not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Review is limited to the complaint's allegations and to the documents attached to a defendant's motion to dismiss to the extent those documents are referenced in the complaint and are central to the claims. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

Finally, in determining whether Chapa's claims survive the Defendants' Rule 12(b)(6) motion to dismiss, the Court is mindful that the Supreme Court has "rejected the argument that a Title VII complaint requires greater particularity, because this would too narrowly [constrict] the role of the pleadings. . . . Consequently, the ordinary rules for assessing the sufficiency of a complaint apply." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002) (citation and quotations omitted).

## III.   DISCUSSION

### A.   CHAPA'S HOSTILE WORK ENVIRONMENT CLAIM

Chapa alleges that the Defendants are vicariously liable for the conduct of Niroomand because he created a hostile work environment by sexually harassing her on

an ongoing basis between 2009 and 2014.[10]  (Dkt. No. 7 at ¶¶ 52, 54).  Specifically, Chapa alleges that "Niroomand created a sexually hostile work environment [through] his words and actions towards . . . Plaintiff.  This conduct was so severe that it altered the terms and conditions of Plaintiff's employment and created an intimidating, hostile and offensive work environment."  (*Id.* at ¶ 52).

In their Motion, the Defendants assert that Chapa's hostile work environment claim is time-barred because her Charge of Discrimination filed with the EEOC does not contain acts occurring during the statutory period.[11]  (Dkt. No. 10 at ¶ 8).  Chapa disagrees for two reasons.  First, she asserts that she did, in fact, allege timely acts relating to her hostile work environment claim.  (Dkt. No. 11 at ¶ 25).  In the alternative, she argues that it is of no consequence that some acts pertaining to her hostile work environment claim are untimely "because all acts which constitute [her hostile work environment] claim are part of the same unlawful employment practice[.]"  (*Id.*).  In light of this, she contends that her hostile work environment "claim is not time barred and remains actionable."

---

[10]  "A hostile work environment based on sex may be a violation of Title VII.  Such a violation occurs when the plaintiff proves she (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [sex]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."  *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 (5th Cir. 2013) (quotations omitted).

[11]  The Defendants also assert that Chapa's retaliation and discrimination claims are time-barred for the same reason.  (Dkt. No. 10 at ¶ 8).  Viewing the Amended Complaint in the light most favorable to Chapa, however, this Court disagrees.  Chapa alleges incidents occurring on or after August 30, 2017, that pertain to her retaliation and discrimination claim.  To the extent her retaliation and discrimination claims rely on conduct occurring prior to August 30, 2017, those claims are time-barred.

(*Id.*).  The Court disagrees with Chapa and concludes her hostile work environment claim is time-barred.

"[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982).  The Supreme Court, in interpreting 42 U.S.C. § 2000e–5(e)(1), has described what this filing requirement demands.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109–110, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002).  In sum, "a litigant has up to 180 or 300 days *after* the unlawful practice happened to file a charge with the EEOC."  *Id.* at 110, 122 S.Ct. at 2070.  The Fifth Circuit has clarified that because Texas "provides a state or local administrative mechanism to address complaints of employment discrimination, a title VII plaintiff must file a charge of discrimination with the EEOC within 300 days after learning of the conduct alleged."  *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998), *abrogated on other grounds by Heath v. Bd. of Supervisors for S. Univ.*, 850 F.3d 731, 737 (5th Cir. 2017).  Chapa's Charge was filed on June 26, 2018.  (Dkt. No. 7 at ¶ 35); (Dkt. No. 1-1).  Accordingly, her Charge only covers acts that occurred between August 30, 2017 and June 26, 2018.  *See Morgan*, 536 U.S. at 109–110, 122 S.Ct. at 2070; *Huckabay*, 142 F.3d at 238.

But, a hostile work environment claim is different than other Title VII claims because it "cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  *Morgan*, 536 U.S. at 115, 122 S.Ct at 2073.  Accordingly,

"[s]uch claims are based on the cumulative effect of individual acts."  *Id.*  Because of the ongoing nature of a hostile work environment claim, "[a] charge alleging [such a] claim . . .will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  *Id.* at 122, 122 S.Ct. at 2077.

A hostile work environment claimant relying on conduct that occurred within and before the commencement of the limitations period must allege facts tending to show that "pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Id.* at 120, 122 S.Ct. at 2076 (alteration omitted).  A hostile work environment claimant who can demonstrate these facts can support a hostile work environment claim based on conduct occurring before the limitations period commenced.  *See id.* at 122, 122 S.Ct. at 2077.

Here, Chapa's hostile work environment claim fails because she does not allege any actionable "words and actions" by Niroomand toward her within the limitations period.  She alleges that Niroomand sexually harassed her several times between 2009 and 2014.  (Dkt. No. 7 at ¶¶ 9–12).  But, in her Amended Complaint, she concedes she was not sexually harassed by Niroomand after 2014.  (Dkt. No. 11 at ¶ 35).

The only alleged act by Niroomand within the limitations period occurred in September 2017, when he "requested an office and UHV assigned him one on the same floor as Chapa's office, which caused her great anxiety."  (Dkt. No. 7 at ¶ 27).  Notably absent from this allegation is any suggestion that Niroomand's request for an office was

hostile or intimidating.  That is, Chapa does not allege that his act of requesting an office, or even being on campus, was hostile in and of itself.  Rather, Chapa implies elsewhere in her Amended Complaint that the hostility arose from her own continuing "fear of running into Dr. Niroomand on campus." (*Id.* at ¶ 34).  In the absence of an allegation of some hostile act by Niroomand after his previous sexual advances, the Court is left to assume that the genesis of Chapa's "fear" was Niroomand's alleged previous sexual harassment.  Thus, Chapa fails to allege any actionable conduct within the limitations period.

The Court therefore concludes that Chapa has failed to meet her burden of alleging facts demonstrating that there were acts that occurred within and prior to the limitations period that were of a similar nature, occurred frequently, and were perpetrated by the same managers.  *See Morgan*, 536 U.S. at 120–21, 122 S.Ct. at 2076.  In other words, she fails to allege Niroomand committed a hostile act against her after the sexual harassment concluded in 2014, let alone within the limitations period.  Accordingly, the Court dismisses Chapa's hostile work environment claim without prejudice and grants leave to amend if she is able to plead facts in accordance with this Memorandum Opinion and Order.  *See Reed v. Brady Trucking, Inc.*, No. 4:18-cv-4437, 2019 WL 1244100, at *7 (S.D. Tex. Mar. 18, 2019) (dismissing the plaintiff's Title VII claim "without prejudice and with leave to amend if [he] can allege facts that would meet the requirements for showing a continuing violation").

### B.    CHAPA'S RETALIATION AND DISCRIMINATION CLAIM

Having concluded that Chapa's hostile work environment claim is time-barred, the Court now determines whether Chapa alleges plausible claims for retaliation and discrimination on the bases of gender and national origin based on incidents alleged to have occurred on or after August 30, 2017.  The Court is mindful that the Supreme Court has concluded "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, *not a jurisdictional prescription* delineating the adjudicatory authority of courts."  *Fort Bend County v. Davis*, ____ U.S. ____, ____, 139 S.Ct. 1843, 1851, 204 L.Ed.2d 116 (2019) (emphasis added).  Therefore, a court may not dismiss Title VII allegations raised in a complaint but not in an EEOC charge *unless* the defendant objects to such conduct being considered by the court for the plaintiff's failure to comply with Title VII's charge-filing requirement.  *See id.* at ____, ____, 139 S.Ct. at 1848, 1850–52.

In the present case, Chapa alleges conduct pertaining to her retaliation and discrimination claims in her Amended Complaint which, viewed in the light most favorable to her, were also raised in her EEOC charge.  *See generally* (Dkt. No. 7 at ¶¶ 9–35).  Her Amended Complaint also alleges acts pertaining to these claims that allegedly occurred *after* she filed her Charge.  *See generally* (*Id.* at ¶¶ 36–46).  These post-charge allegations, therefore, could not have been raised in her Charge.

The Defendants, in their Motion, however, make no assertion that Chapa failed to comply with Title VII's charge-filing requirement with respect to the post-charge allegations.  (Dkt. No. 10).  In the absence of the Defendants' objection, the Court must consider the post-charge allegations in determining whether Chapa has set forth

plausible claims for retaliation and discrimination.   Viewing the allegations in the Amended Complaint in the light most favorable Chapa, the Court concludes she has not.

### 1.    Retaliation Claim

Chapa alleges that Niroomand and his subordinates "retaliated against Plaintiff for her opposition to [Niroomand's] sexual advances and for reporting his intimidating, hostile, and offensive conduct."  (Dkt. No. 7 at ¶ 53).  Chapa's Amended Complaint is not a model of clarity, as she does not specify the factual allegations underlying each of her claims.  Yet, viewing the Amended Complaint in the light most favorable to Chapa, the Court concludes her retaliation claim is premised on the following allegations of conduct occurring on or after August 30, 2017:

1) assigning Niroomand an office on the same floor as Chapa's office in September 2017, (*Id.* at ¶ 27);

2) providing Chapa with an ADA accommodation request form that was significantly different than the accommodation request form made available to other employees and ultimately denying her accommodation request, (*Id.* at ¶¶ 36–38, 41);

3) the Director's e-mail to Chapa in which she allegedly taunted Chapa, (*Id.* at ¶ 39);

4) Chapa being assigned to teach a course outside of her department and additional responsibilities, (*Id.* at ¶¶ 32, 39–40);

5) Chapa being assigned to teach on the Katy campus, (*Id.* at ¶ 38); and

6) Chapa being improperly evaluated for her 2017 and 2018 work performance, which allegedly adversely affected her pay.  (*Id.* at ¶¶ 33, 43).

To prove a Title VII retaliation claim, a plaintiff must show that "(1) she engaged in activity protected under Title VII, (2) an adverse employment action occurred, and

(3) there was a causal connection between her protected activity and the adverse employment decision." *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 327–28 (5th Cir. 2019).  For the following reasons, the Court finds that Chapa engaged in protected activity but fails to plead sufficient facts showing the Defendants took an adverse employment action against her.

### a.   Protected Activity

The first element of a Title VII retaliation claim requires the plaintiff to engage in activity protected by Title VII.  The Fifth Circuit has explained "[a]n employee has engaged in activity protected by Title VII if she has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. . . ." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).  Based on the allegations in the Amended Complaint, the Court finds Chapa engaged in protected activity under Title VII on two occasions.  First, when Chapa filed a Formal Complaint with UHV that Niroomand sexually harassed her. *See id.*  Second, when Chapa filed her Charge with the EEOC.  *Id. See also*, *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015)..

### b.   Adverse Employment Action

The next element is whether Chapa has plead facts sufficient to demonstrate that the Defendants took an adverse employment action against her.  As stated above, Chapa alleges six types of adverse employment actions in her Amended Complaint.  For the

reasons that follow, the Court finds that the alleged actions, viewed in the light most favorable to Chapa, are not adverse employment actions.

"For purposes of Title VII's anti-retaliation provision, the Supreme Court has held that an adverse employment action is defined slightly more broadly than the term is defined in the employment discrimination context." *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826 (5th Cir. 2019) (citing *Burlington N. & Santa Fe Ry. Co v. White*, 548 U.S. 53, 67–68, 126 S.Ct. 2405, 2414–15, 165 L.Ed.2d 345 (2006)).  Specifically, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68, 126 S.Ct. at 2415 (quotations omitted).  "Title VII's anti-retaliation provisions do not protect employees from petty slights, minor annoyances, and simple lack of good manners. . . .  However, retaliatory adverse employment actions also need not rise to the level of ultimate employment decisions." *Welsh*, 941 F.3d at 827 (cleaned up).  Further, "when determining whether an allegedly retaliatory action is materially adverse, courts look to indicia such as whether the action affected job title, grade, hours, salary, or benefits' or caused a diminution in prestige or change in standing among . . . coworkers." *Id.* (quotations omitted).

The Court begins with Chapa's allegation that the Defendants took an adverse employment action against her when they assigned Niroomand an office on the same floor as hers in September 2017, even though she had filed a Formal Complaint alleging he sexually harassed her.  (Dkt. No. 7 at ¶ 27).  Although this decision was perhaps ill-

advised in light of the circumstances, the Court finds it is not an adverse employment action because it is not materially adverse.  Indeed, Chapa does not allege facts showing that assigning Niroomand an office on the same floor as hers affected her job title, grade, hours, salary, benefits, prestige, or standing among her co-workers.  *See Welsh*, 941 F.3d at 827.  The Court also finds her allegations about the way the Defendants handled her ADA accommodations request and that the Director allegedly taunted her are not adverse employment actions for the same reason.  *See id.*; (Dkt. No. 7 ¶¶ 36–39, 41).

The Court further finds that assigning Chapa more responsibilities, requiring her to teach a course outside of her department, and sending her to teach on the Katy campus do not constitute adverse employment actions.  The Supreme Court and the Fifth Circuit have previously addressed similar allegations and have concluded that they do not necessarily constitute adverse employment actions.  *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 71, 126 S.Ct. at 2417 (recognizing that "reassignment of job duties is not automatically actionable" absent other evidence tending to show the reassignment was a materially adverse action); *Welsh*, 941 F.3d at 828 (observing that, under certain circumstances, "changes to the curriculum and [re]assignment to classes with 'at risk and special needs' students [do not constitute] retaliatory adverse employment actions"); *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 709 (5th Cir. 2016) (finding that "mere denial of a reassignment to a purely lateral position ('no reduction in pay and no more than a minor change in working conditions'), is typically not a materially adverse action"); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331–32 (5th Cir. 2009) (concluding that being "given a heavier workload . . . [a]s a matter of law . . . do[es] not rise to the

level of material adversity [and is] not actionable retaliatory conduct"); *see also Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 347 (5th Cir. 2016) (per curiam) ("[A] reassignment that requires additional tasks is not materially adverse if it is not accompanied by any other change in the employee's status . . . .  Rather, as we have repeatedly held, a 'purely lateral transfer' is not an adverse employment action." (citations omitted)); *cf. Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (holding that reassignment from one facility to another, without more, is not an adverse employment action in the context of a discrimination claim).  Absent additional facts tending to show these actions were materially adverse—that is, they affected Chapa's job title, grade, hours, salary, benefits, prestige, or standing among her co-workers—the Court finds Chapa's allegations concerning additional work responsibilities and reassignments do not constitute adverse employment actions.

Furthermore, the Court finds that the alleged improper evaluations assessing Chapa's 2017 and 2018 work performance, coupled with the alleged denial of salary increases, do not constitute adverse employment actions.  The Fifth Circuit has held that receiving an unsatisfactory performance evaluation in and of itself is not an adverse employment action.  *See Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 n.19 (5th Cir. 2017) (determining that the plaintiff's termination was the only viable 'adverse employment action,' alleged, in part, because "a negative performance evaluation does not constitute 'an adverse employment action actionable under Title VII'" (citations omitted)); *see also Johnson v. McDonald,* 623 F. App'x 701, 704 (5th Cir. 2015) (per curiam) ("[T]his court has held a low performance evaluation alone is not an adverse employment

action[.]").   In this case, Chapa alleges that the "decisions concerning [her] 2017 evaluation . . . adversely impacted [her] 2018 evaluation and the salary increases that all faculty received in 2018 and 2019." (Dkt. No. 7 at ¶ 33).  Viewing the Amended Complaint in the light most favorable to Chapa, the alleged improper evaluations Chapa received for her 2017 and 2018 work performance are insufficient by themselves to constitute adverse employment actions.

Even assuming that the alleged improper evaluations Chapa received are coupled with a tangible effect, such as not receiving salary increases in 2018 and 2019, Chapa fails to allege with sufficient specificity the effect that receiving low marks on her performance evaluations had on her receiving salary increases.  *See Johnson*, 623 F. App'x at 704 (concluding that a plaintiff does not allege an adverse employment action if he fails to plead facts showing that a low evaluation is tied to not receiving benefits).   Chapa does not plead facts tending to show that salary increases are tied to performance evaluations. For example, she does not demonstrate that other faculty who received salary increases also received high marks on their performance evaluations or that faculty who were denied salary increases received low marks.  Absent facts of this nature, Chapa's assertion that she did not receive salary increases in 2018 and 2019 because of her low marks on her performance evaluations is speculative at best.  Consequently, the Court finds that Chapa's allegations concerning her performance evaluations do not rise to adverse employment actions.

Because Chapa fails to allege an adverse employment action, the Court concludes that she fails to state a claim of retaliation under Title VII.[12]   Therefore, the Court dismisses her retaliation claim, but without prejudice and with leave to amend.

## 2.   Discrimination Claim

The Court next considers whether Chapa sets forth a plausible discrimination claim.   In support of their argument that Chapa failed to state a plausible claim for discrimination, the Defendants assert Chapa merely makes conclusory allegations in support of this claim.   (Dkt. No. 10 at ¶ 19).   Moreover, they contend that Chapa fails to allege "actions by the Defendants that constitute discrimination against Plaintiff," and further that her allegations do not otherwise tie Defendants to discrimination against her based on her gender or national origin." (*Id.*).   The Court agrees with the Defendants.

A *prima facie* case for discrimination under Title VII may be established by a showing that the plaintiff "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) suffered some adverse employment action by the employer; and (4) was treated less favorably than other similarly situated employees outside the protected group."   *See Welsh*, 941 F.3d at 823.   Notably, "the ultimate question in a Title VII disparate treatment claim [is] whether a defendant took the adverse employment action against a plaintiff *because of* her protected status."   *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (quotations omitted); *see also Reed*, 2019 WL 1244100, at *11.   For a

---

[12]   The Court need not address the third element of a *prima facie* case for retaliation—that there was a causal connection between Chapa's protected activity and the adverse employment action—because the Court finds that Chapa fails to set forth an adverse employment action as part of her retaliation claim.

plaintiff's Title VII discrimination claim to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege facts tending to show the alleged adverse employment decision was motivated by either gender or national origin.  *See id.*

In support of her discrimination claim, Chapa alleges her work performance was improperly evaluated, which allegedly resulted in her not receiving salary increases. (Dkt. No. 7 at ¶¶ 16, 33, 43–46).  She also alleges she was assigned additional teaching responsibilities, including a course outside of her department during several semesters. (*Id.* at ¶¶ 17–18, 20, 24, 27, 32, 60).  Chapa makes no allegation that she was given a below average performance evaluation or assigned to teach certain courses *because of* her gender or national origin.  The only allegations Chapa makes in her Amended Complaint or Charge that the Defendants' actions against her were related to her gender or national origin are: (1) Chapa's "salary increase was about half of that received by [an] [A]nglo female and less [than] that . . . received by the males who previously and subsequently received tenure and promotion in the Management Department," (Dkt. No. 7 at ¶ 16); (2) "Defendants . . . intentionally discriminated against the Plaintiff because of her gender and . . . national origin," (*Id.* at ¶ 58); (3) "[t]he reassignments, which result[ed] in additional teaching expectations for [Chapa], benefit younger, non-Hispanic males in the Strategy Department who would have otherwise been assigned to teach the course during the Fall 2017 and Spring 2018 semesters" (Dkt. No. 1-1); and (4) Chapa "believe[s] [she is] being discriminated against because of [her] sex (female) [and] national origin (Hispanic) . . . ."  (*Id.*).

These conclusory allegations are insufficient to show the Defendants' actions were because of Chapa's gender or national origin.  Indeed, Chapa fails to allege any facts showing that similarly situated employees who were not members of a protected class were paid more than her, evaluated differently than her, or not assigned classes outside of their departments.  Moreover, Chapa fails to allege facts showing that the manner in which the Defendants evaluated her, determined her pay, or issued her course assignments was motivated by her gender or national origin.  Having viewed the allegations in the Amended Complaint in the light most favorable to Chapa, the Court finds that Chapa fails to state a plausible discrimination claim.  Accordingly, the Court dismisses this claim.

## IV.    CONCLUSION

Based on the foregoing reasons, the Court **GRANTS** the Defendants' Motion.  The Court **DISMISSESS WITH PREJUDICE** Chapa's prayer for punitive damages.   The Court further **DISMISSESS WITHOUT PREJUDICE**, but with leave to amend, Chapa's hostile work environment, retaliation, and intentional discrimination claims. The Court finally **ORDERS** Chapa to, in her Second Amended Complaint, separate her hostile work environment and retaliation claims into two separate counts—see footnote eight—and address the issues with her Amended Complaint raised in this Order.  Chapa shall file a Second Amended Complaint no later than fourteen days from the date of this Order.

It is SO ORDERED.

Signed on September 30, 2021.

_____

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**